Mr. Ward your second appearance before us this week. Yes, your honor. Good afternoon. May it please the court, counsel, my name is Mike Ward on behalf of the appellant, Auto-Owners Insurance Company. The question presented by this appeal is whether or not an automobile insurance policy issued by auto owners with a $1 million each occurrence limit for uninsured motorist coverage provides a total of $3 million in coverage for plaintiff's claims. The district court held that there was $3 million in coverage, up to $1 million for each of the three claimants under the policy based on a perceived ambiguity in the policy. The district court erred in so ruling. In this case, the named insured Advantage Marine purchased a policy from auto owners to provide a total of $1 million in coverage per occurrence. Advantage did not procure a policy that provided a maximum of $1 million in coverage per injured person. The policy's premium did not account for that kind of potentially unlimited liability and exposure. The question is whether or not the district court's interpretation of the In this case, the district court's interpretation is at war with the policy language and the party's intent. The named insured here purchased a policy that would provide the maximum of coverage of $1 million per occurrence and not $3 million based on the number of individuals injured. The interplay of the limit of insurance provisions, paragraphs 4A, 4B, which contain the subject to language, don't compel a contrary conclusion. The district court found those provisions to be ambiguous because they were perceived to be circular, that they were self-referential. But when the policy is read as a whole, the provisions are harmonized, the meaning is given to all the terms, there is no ambiguity. There's only one reasonable interpretation. Paragraphs 4A and 4B are not circular, they're complementary. Paragraph 4A makes plain that when there are multiple occurrences, their total recovery cannot exceed each occurrence limit. Paragraph 4B makes plain that a single person's recovery can never exceed each person limit regardless of whether the amount of the each occurrence limit, or excuse me, cannot exceed the each person limit regardless of the amount stated on the policy for the each occurrence limit. The fact that the two limits are identical does not create an ambiguity. The plaintiffs have argued that auto owners in the trial court and before the district court offered a non-trivial, could not provide a non-trivial explanation for why they were identical limits for the each person limit and the each occurrence limit. But the explanation that we gave was not a trivial one. It was based on the terms of the contract. In this case, the insured, the named insured procured a policy with a per person limit of $1,000,000 and each occurrence limit of $1,000,000. And that was in exchange for a premium and that was the coverage that auto owners then issued per the insured's request, the named insured's request. It's important to note in this case that the plaintiffs are not named insured under the policy. They're strangers to the policy. They were permissive users of a vehicle insured under the policy. So they have no expectations beyond the plain language of the policy in terms of coverage. Well, let me interrupt you, Mr. Ward. There are so many insurance cases, particularly the Missouri Court of Appeals. We've had, as you know, court appeals forever and they've written cases on insurance forever. 1885, I exaggerate a little bit. But my point simply is, what is the closest case that gives us guidance in all these thousands of cases? Well, Your Honor, there would be two approaches to take in terms of the cases that give guidance. There's American Family v. Gardner and Ward v. American Family that address the Subject 2 language that address when there is an insurance limit, how the insurance limit is interpreted. That would be where to look for in terms of guidance. But more fundamentally, this is really a case that turns on the rules of construction, which any number of cases, I mean innumerable cases in the Southwestern Reporter and also in the Federal Reporter with this court's interpretation of cases of dealing with a reasonable one. The rules of construction require the court to give meaning to all the terms of the policy, to read the policy as a whole, to harmonize perceived inconsistencies in the policy, and not allow a provision to perish by way of construction if it's reasonably possible to save the provision. And those are basically the rules of construction, not guided by one particular case. Which Missouri Supreme Court case gives us the most guidance? With respect to the rules of construction, Your Honor, in terms of the rules of the Todd case by the Missouri Supreme Court, it has a very good summary of the rules of construction for an insurance policy. That would be an obvious case to cite to the court in terms of the rules of construction. Say it to me again and say the year, if you would, the name of the case and year. Your Honor, in terms of the policy, the cases that we cited in our brief, I did not cite the Todd case. I only mention that because it is one of the leading cases that deals with the interpretation of the rules of construction. Again, with respect to this particular case, there is really no case on point that gives guidance that interprets the exact language in this case. The rules of construction are general that apply. How is section 4B subject to 4A? Yes. Basically, 4B, being subject to 4A, instructs the policy, the reader, on the party claiming coverage that in no circumstances can the per person limit be increased to the occurrence limit. In other words, there cannot be an expectation of more than $1 million in coverage under this particular policy based on the language. This issue is more germane when there is different limits. For example, the each person limit is $1 million and the each occurrence limit is $2 million. Where this issue has come up in the cases is where, based on the each occurrence limit, and this will be the Ward case and the Gardner case, Your Honor, where the plaintiff, the claimant coverage will argue that they should be entitled to cover more than the each person limit based on the greater each occurrence limit. The purpose of the subject to language in the policy, the limits of insurance provision, is to advise the reader that under no circumstances, regardless of the number of claimants to coverage, that under no circumstances can the single claimant recover more than $1 million. In this case, it's really a moot issue with respect Would that be like a situation where a single person had three separate occurrences and that you're reading is that that person then could not recover more than $1 million on three separate occurrences. Is that the way you're reading this? No, Your Honor. The application in this particular case is based on there was a single occurrence and with multiple claimants to coverage. I understand that's the fact of this case. I'm just trying to understand how these two sections can be read in a way that makes some sense. The example that you gave, Your Honor, where there was multiple accidents, they would not, these two sections would not address that scenario. This scenario addresses when there is a single accident and there are multiple claimants. Paragraph 4A tells the reader of the policy that the most that a single person can recover is $1 million, subject to the each occurrence limit, which also happens to be $1 million. Paragraph 4B advises the reader that a single person's recovery can never exceed the each person limit. Mr. Ward, how many Missouri cases have it where you have the same number for the each person and the each occurrence? Are there reported cases that at least have the same number for both? In my research, Your Honor, for the appeal, I did not find an appellate decision that addressed a combined single limit case in this context. Combined single limit cases are not unusual in the auto context. Many insurers will write policies that will have what is called a combined single limit that will state that regardless of the number of people injured that the most can be recovered is $1 million and the most an individual can recover is $1 million. In terms of the issues framed by this appeal, Your Honor, I did not find a Missouri appellate decision directly on point that would address this particular case. Basically, in terms of my research, which may have been imperfect, it came down to the rules of construction. Is it reasonable to interpret a policy that has an each occurrence limit of $1 million? Is it reasonable to interpret it to provide potentially unlimited coverage limited only by the number of claimants and the nature extent of their injury? In other words, plaintiff wants, in the district court, that basically ruled out, eliminated by construction, by interpretation, the each occurrence limit from the policy. Was it a reasonable interpretation of the policy when the policy is written to provide a maximum of $1 million in coverage? Was it reasonable to essentially delete that provision from the policy? What about their strongest argument, which is you never have to pay a million if there are multiple people involved, so your each occurrence is illusory? I think that summarizes it briefly for you. Your Honor, the coverage under the auto owner's policy is not illusory. The plaintiff cited three cases, Jones, Ritchie, and Fanning. In each of those cases, there were provisions, for example, Jones and Ritchie both dealt with underinsured motorist coverage. The policies that came contained setoff provisions. The policies contained insuring agreements that promised the insured that the carrier would pay up to $1 million in event of a loss. But based on the setoff provisions in the policies, there was no possibility that the carriers who wrote the policies in Ritchie and Jones would ever pay $1 million. It was impossible based on the policy language. Fanning was somewhat similar in that it contained when there was the argument, the ruling by the court of appeals was that there was the statement that X amount of coverage on the declarations page, but there were limitations in the main body of the policy that made it plain that you would never recover the stated limit of coverage under the declarations page. We don't have that here. Auto owners agreed to provide $1 million per person subject to the each occurrence limit. And then with the further guidance that under no circumstances could a single person recover more than $1 million. In this case, there was no attempt by auto owners to reduce coverage under the policy. The policy speaks for itself. There was $1 million per occurrence available for everyone injured in an accident. What plaintiffs want to do is contrary to the illusory coverage cases in Jones, Ritchie and Fanning, they want to multiply the coverage under the policy based on the number of potential claimants. So the illusory coverage cases cited by the plaintiffs really are an apposite. This is not a case where auto owners sought to reduce coverage under its policy. It's a case where the plaintiffs seek to multiply coverage in a sum that was never intended by auto owners in the name insured. So the question here is not a question of illusory coverage. The policy spoke for itself and there was never an attempt to reduce the coverage. There was a, I guess, I remember an old underwriter said never give an insurance person a blank, an underwriter a blank piece of paper because when you deal with policy language and whatever that is right to create ambiguities or confusion. But the intent here was that there would be, in the event of an automobile accident, if one person were injured, they would be entitled to $1 million. If more than one person was injured, there would be only a total of $1 million available for all potential claimants. Okay, counsel, let me stop you right there. Yes, your honor. And go back to Judge Grunder's earlier question. I have to confess, I'm not sure I really understood your explanation. So I just wanted to ask you, if you look at section 4B, what does the phrase subject to 4A above, what does that add or take away from the rest of that provision? I think I understand your explanation as to what each of 4A and 4B is perhaps intended to do, but I'm just confused as to why the phrase subject to 4A above. Why is that there? What's the purpose of that phrase? The purpose is to, again, to advise the reader of the policy that under no circumstances can a single claimant recover more than a million dollars. Again, going back to the example of the there were cases that were where the each occurrence limit is greater than each person limit. And a single claimant would attempt to argue that they are entitled to more than each person limit based on the greater sum of each occurrence limit. Here we have identical limits for the each person, each occurrence. And so it's somewhat not really jive or applies in a straightforward manner to this situation. But the intent of that language was to advise the reader that regardless of the amount of the each occurrence limit, that a claimant could never recover more than the each person limit, Your Honor. That was the purpose of that language. But isn't that covered by 4A? The provisions are complementary. They're somewhat of a belt and suspenders approach to defining the limits of insurance. And 4A says that, again, in terms of what the purpose of 4A, is to address the coverage available to a single person. 4B is to address the coverage available to every claimant who has been injured. And so 4A advises the reader that in the event a single person is injured, that a single person cannot recover more than the total amount of coverage for every single person injured cannot exceed the each occurrence limit. Thank you, Mr. Ward. The court will hear from Mr. Rodopoulos. Thank you, Your Honor. Good afternoon, Your Honors. May it please the court. I'm Ari Rodopoulos. I'm here on behalf of the appellees. And this is an unusual case in that I was unable to find this exact policy language anywhere in Missouri, out of Missouri, at the appellate level, even at district court levels. I was unable to find this type of policy language where each person and each occurrence limits are made subject to one another and where the limit was exactly the same. So it is a construction case. And in Missouri, we have to give what an ordinary person would attach to these terms and phrases. And if there are ambiguities, we have to resolve them in favor of the insured. And then when we're making that inquiry— Wait a second. You're not the insured, are you? So that's not quite true. Go ahead. We're occupancy insured, Your Honor, under the policy. Occupancy insured. And then the phrases have to be interpreted in the context of the policy as a whole, not in isolation. And in doing that, we can't do interpretations that leave certain provisions meaningless or without function. And we also have to avoid interpretations that leave phrases trivial or superfluous. Well, here, to the ordinary person, confusion starts right from the beginning of this policy. Just for example, at the declarations, the liability coverage states it's a combined single limit with a single per occurrence limit. But for the uninsured coverage, which is that issue here, it states there's an each person limit and a per occurrence limit. So right from the beginning, the ordinary person sees a difference between what the policy says is a single combined limit, which is the liability section, versus an each person, each occurrence limit for uninsured. So there's a distinction right off the bat at the beginning of the policy. Then when you get further into the policy and look at the in the liability section, the each occurrence limit is defined subject to the each person limit. Okay, let me interrupt you there. Let me interrupt you there. What's your closest Missouri case? And actually, I think I said 1885, it was 1875, the Eastern District Court of Appeals was established. But simply, what's your closest Missouri case in all the thousands of Missouri insurance cases? Sure. My closest case is going to be the Ritchie decision. That Ritchie is a set off. So and that's, I'll let you explain to me how it applies. But it's set offs different, because there you start at the top and you take away. So So let me ask you this, what about Brown versus Dunham, a 95, Missouri Supreme Court case that you did not reply to, they haven't both their opening and others. And it worries about potentially unlimited payment. And here, the way you're interpreting, as I understand it, if you hit the uninsured school bus of the church, the church has 40 kids in there, and they're uninsured. And you hit them, it's $40 million, they owe a million for each kid in the bus, right? Perhaps if the policy is written very, very policy, this policy, it's $40 million. Your Honor, the reason why I say, and I'll answer the first part of the question, followed by the second part. The Ritchie case is the closest in my view, because we have no case Missouri or elsewhere that has this policy language. And so everything else is just kind of loosely instructed. However, the Ritchie case, even though it's dealing with a set off, instead of uninsured provisions, it's the closest because it establishes the principle of, if there's an express provision that provides coverage, a maximum amount of coverage, that another provision in the policy makes it impossible for that maximum amount to ever be paid, we have a problem. Illusory coverage, go ahead. Illusory coverage. I do believe that that's why that case is the closest. Now on the question of the hypothetical that you gave, it's not unlimited for any reason other than the policy was not drafted well. It is limited by the number of people that are injured. Unfortunately, it does create that problem. But as the drafters of the policy, they could have so easily avoided that by simply doing a combined limit like they've done elsewhere in the same policy. I'm cutting off so you use your time. You agree if they're horrible and you say that's just the way it is, they wrote it, they're stuck with it. I agree with that the each person limit and the each occurrence limits here are conflicting and ambiguous and should be resolved in favor of coverage, which in this case would be in favor of the insureds here, the occupancy insureds, which would result in a one million of coverage per person for a total of three since we had two deaths and one person injured. An insured school bus, it'd be 40 million. Unfortunately, I think it may be. Unfortunately, there are 40 kids killed. I'm sorry, go ahead. That's okay. That's one of the situations that could so easily be avoided by just doing a single combined limit. Or even if the limits were different, that's another way to avoid it. If you had a higher per occurrence limit than a per person limit, you could cap all those damages to three million, even if 40 million were injured. And you wouldn't run into the problem that Richie talks about or that some of the interpretation issues that we've come into. So easy ways to solve this. It's unfortunate or I guess it's fortunate for auto owners here that there was only three people injured versus 40. Mr. Rodopoulos, doesn't your reading and the district court's reading though effectively read out entirely the each occurrence limit? I don't think so. No, it doesn't. It actually is working the other way around. I think what it's trying to recognize is that if you don't read it this way, you're reading out the each person limit, which expressly states there will be up to a maximum of one million per person, even in situations where multiple persons are injured. How does the each occurrence limit, how is it ever effective given your reading? Well, in this case, because of the irreconcilable differences resulting in ambiguity, it's problematic. I mean, that's the issue is there's no way to reconcile these two provisions that are conflicting, yet they also purport to be mutually subordinate to each other. And so when you have an irreconcilable conflict like that between the two, Missouri law says you have to find coverage in favor of the insured, even if it means that that provision, the per occurrence, the intent that auto owners may have had was not expressed properly under Missouri law. Let me direct you back to Brown versus Dunham. I think Judge Grunder is not asking another question. I want to be sure that's the consequence of Zoom. It's not like being there by each other. But the question simply is now Brown versus Dunham does implicitly kind of address this situation. Are you familiar with Brown versus Dunham? Yes. Good. Because it says that if there are one million for 40 injured people and each occurrence is, let's make it a giveaway your case, 1.2 million, that then that's prorated, right? That's what it says is that you I'm trying to look at implicate that and they are reduced. Each of the claims are reduced. So it just adds up to that, right? Sure. It does say that. However, there's a each person and each occurrence limits being made mutually subject to each other, which is important. And two, we have we don't have each person and each occurrence limits that are identical. Well, wait, the court by I don't mean to beat you up for this point, but the Missouri Supreme Court said that when the Missouri Supreme Court says this, like they didn't Brown versus Dunham in 1995, that that's then in every insurance policy in the case in the state. It's in every insurance policy. So I don't think your first reason necessarily holds water if Brown versus Dunham applies this case. And again, I do think it's a significant distinguishing factor because in Brown, there was no irreconcilable ambiguity where you essentially had to choose between one provision or the other. And under some of the claimants, for some of the claimants there, they did have to choose between one or the other. Right. That's the point of the case. Kind of the difference being, though, it was either a lower per person limit or a higher each occurrence limit. And in the Brown case, they don't run afoul of the illusory coverage issue in Ritchie. And so that's why I do think that that case is distinguishable and it doesn't suffer from the same problem that this policy suffers from. Specifically, that issue is their policy contemplates multiple people being injured in their per occurrence limit. And in that same provision, they expressly made it subject to the per person limit. And so it's not as auto owners say that says that the each person limit only applies when one person is injured. And then if multiple people are injured, only the per occurrence limit. No, under this policy, it is clear that even when multiple people are injured, the each person limit still continues to provide up to one million per person, the most that auto owners will pay. And under auto owners interpretation, there is no circumstance where multiple people are injured where any one of them could ever be paid the most that the policy says it will pay. And that's why I think it runs afoul of the Ritchie or it's similar to the Ritchie decision and why I do think it's highly distinguishable from the I still think we're sort of, you know, between a rock and a hard place. We either have to read out the phrase subject to from Section 4B or read out 4B in its entirety. I think that's kind of where we're at. And it seems to me the more moderate approach is to just read out the case. I felt a tendency to want to read something out as well. But under Missouri law, we cannot do that. But under your reading, I have to read out the entirety of 4B. And we're not reading it out. But what we're doing is we're applying Missouri law. And Missouri law says where there are two irreconcilable and ambiguous provisions, you apply the one. But to be ambiguous, you have to have two reasonable interpretations. Is it reasonable to read out in its entirety the each occurrence limit? No, I don't think you read it out entirely. You don't read it out entirely. Here, you just apply the per person limit. That's it. Because there's an irreconcilable conflict. But isn't that doing it? Isn't that exactly reading out the per occurrence limit? Well, your honor, in every case where there was deemed to be an irreconcilable conflict between these two provisions and the per person limit was applied, and lots of courts have done that, they inevitably pick one provision over the other. The opposite would be even though the which is contrary to Missouri law, which states whenever there's an irreconcilable conflict, you apply the provision and resolve it in favor of the insured. And so between your two choices, I don't think you can just read the subject to phrase out of either of those sections. And instead, the proper way is to end up with an irreconcilable conflict resulting in in favor of the insured. Here, the occupancy insured. What about a tiebreaker being, and I know you just have 30 seconds, the anti-stacking provisions? Missouri courts say if you put a clear anti-stacking provision, we'll enforce it. But if you don't, we're going to stack. So what do you think about saying the anti-stacking provision that's later in 4D, that that's a tiebreaker? Sure. So my thoughts on that, or I tried to stack in this case, and we had argued it stacked to three million or six million, and we lost that issue. So for clarity, my argument is not that we're stacking. My argument is that there's irreconcilable conflict between each person and their occurrence limit, and therefore you apply to each person limit. However, 4D does have some language, and Judge Lowry relied on it to support her conclusions. It does say, except as provided in 4A, 4B, the limit is not increased, and then it lists a couple factors, which to an ordinary person at least suggests that 4A must be interpreted as providing some additional limits. But I did lose on that argument overall, and we didn't challenge that on appeal. Thank you, Your Honors. Thank you, Mr. Rodopoulos. Mr. Ward, you used all your time, but I'll give you one minute if there's something you want to respond to. Thank you, Your Honor. I just want to emphasize the point made that there has to be a reasonable construction of the policy consistent with the party's intent. The party's intent was to issue a policy that had a maximum of $1 million in coverage for all injured persons in a single occurrence. The district court's decision eliminated that provision from the policy. For that reason, I request the court to reverse the district court's judgment. Thank you. Very well, counsel. We appreciate your appearance and briefing. The case is submitted and we will issue an opinion in due course.